# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMES POULSEN,<br><br>                Plaintiff,<br>vs.<br><br>CACHE VALLEY TRANSIT<br>DISTRICT and TODD BEUTLER, in his<br>individual capacity,<br><br>                Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 1:18-CV-00110-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants Cache Valley Transit District and Todd Beutler's Partial Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the Motion on May 14, 2019. At the hearing, Defendants were represented by Bradley R. Blackham, and Plaintiff was represented by Jason D. Haymore. The court took the matter under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the Motion. Now being fully advised, the court issues the following Memorandum Decision and Order granting Defendants' Partial Motion to Dismiss.

## BACKGROUND

Cache Valley Transit District ("CVTD") is a local district under Title 17B of the Utah Code. CVTD provides local public transportation in the Cache Valley area of northern Utah. Todd Beutler ("Beutler") is the General Manager of CVTD. In August 2010, CVTD hired James Poulsen ("Poulsen"), and he eventually became an Operations Supervisor over Driver Development & Safety Services. In 2012, Poulsen overheard CVTD's Chief Financial Officer, Curtis Roberts ("Roberts"), speak to someone on the telephone about a home mortgage refinance

through Mountain America Credit Union ("Mountain America"). Approximately one month after that telephone call, Mountain America attended a CVTD employee meeting and offered credit union memberships to CVTD's employees. Then, years later in February 2018, Poulsen told Beutler that he believed that Roberts had received a benefit on his home mortgage refinance because of his position with CVTD. Approximately five days after that conversation, Poulsen received a written warning for failure to work as directed. Within ten days of receiving the written warning, Plaintiff learned that a complaint had been made against him for (1) establishing a hostile work environment and (2) spreading misinformation about Roberts. On February 28, 2018, CVTD terminated Poulsen's employment.

When CVTD terminated Poulsen's employment, it gave him no reason for the termination. Rather, it explained that no reason was required. Yet, the CVTD Employee Handbook contains a section that states that "[a]ll formal forms of discipline will be communicated to the employee through a Disciplinary Notice," which would be "[d]elivered personally, whenever possible, to the employee being disciplined, or [b]y certified mail." Poulsen never received a Disciplinary Notice regarding the allegations against him, and he was never given an opportunity to be heard prior to his termination. On April 12, 2018, Poulsen, by counsel, sent a letter to each member of CVTD's administrative control board in which he demanded to be reinstated and claimed that CVTD had violated his due process rights. On April 23, 2018, CVTD responded to Poulsen's letter by rejecting both his claims and request for reinstatement.

Poulsen commenced the instant suit on September 6, 2018. On January 30, 2019, Poulsen filed an amended complaint alleging five causes of action: (1) violation of 42 U.S.C. § 1983 for deprivation of a property interest without due process; (2) a declaratory judgment

declaring Poulsen's status as a merit employee; (3) violation of Utah Code § 67-21-1(1)(a) (the Utah Whistleblower Act); (4) breach of contract; and (5) breach of the implied covenant of good faith and fair dealing.[1] Poulsen claims that CVTD was required to either comply with the merit-based system of personnel administration established by Utah Code § 17B-1-801 or create a personnel system that provides for the implementation of merit principles pursuant to Utah Code § 17B-1-803. Because sections 801 and 803[2] create a merit system of employment, Poulsen claims that he had a property interest in his continued employment that entitled him to some level of due process. Further, Poulsen contends that while CVTD did establish a personnel system with employment policies and procedures, that system did not implement merit principles. Instead, the CVTD Employee Handbook states that all CVTD positions are "at-will." Furthermore, Poulsen claims that CVTD breached certain provisions in its Employee Handbook by failing to provide him with a Disciplinary Notice before his termination, and that he was terminated in retaliation for having reported Roberts' alleged unlawful activity to Beutler.

## DISCUSSION

Defendants move to dismiss Poulsen's first three causes of action: (1) violation of 42 U.S.C. § 1983 for deprivation of a property interest without due process; (2) a declaratory judgment declaring Poulsen's status as a merit employee; and (3) violation of the Utah Whistleblower Act.[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Dorf v. Bjorklund*, 531 F. App'x 836, 837 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1] Poulsen's First Cause of Action, the § 1983 claim, is the only claim asserted against both CVTD and Beutler. The remaining four are asserted only against CVTD.
[2] These statutes come from the section of the Utah Code that governs personnel management in Utah's local districts.
[3] Poulsen's Fourth and Fifth Causes of Action, his contract-based claims, are not at issue on this Motion.

3

(2009)). "[A]ll well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)). Nevertheless, "mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

**A. Section 1983 Claim for Deprivation of a Property Interest**

"An entity sued under section 1983 is subject to liability only when its official policies or customs are responsible for deprivation of rights protected by the Constitution." *Guinn v. Jeffco Combined Courts*, 537 F. App'x 790, 791 (10th Cir. 2013). For a plaintiff to establish that he or she has "been deprived of a property interest without due process" in violation of the Constitution, the plaintiff "must first prove that he [or she] had a property interest." *Palmer v. City of Monticello*, 731 F. Supp. 1503, 1506 (D. Utah 1990), *aff'd*, 31 F.3d 1499 (10th Cir. 1994). In the context of employment, the "United States Supreme Court has defined such a property interest as requiring a legitimate expectation in 'continued employment.'" *Judkins v. Jenkins*, 996 F. Supp. 2d 1155, 1165 (D. Utah 2014) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). The Constitution, though, does not create a property interest in continued public employment. *Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1128 (10th Cir. 2001). "Rather, a property interest in continued public employment must 'stem from an independent source such as state law.'" *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "State law sources for property interests can include statutes, municipal charters or ordinances, and express or implied contracts." *Id.*

4

Once an employee has identified a state law source, that employee holds a property interest in continued employment only if under that source, he or she "has a legitimate claim of entitlement to—not merely a unilateral expectation of—continued employment." *Carnes v. Parker*, 922 F.2d 1506, 1510 (10th Cir. 1991) (quoting *Roth*, 408 U.S. at 577) (quotation marks omitted). But "[a]n entitlement to continued employment only arises" when the state law source "place[s] substantive restrictions on a government actor's discretion to make personnel decisions, such as when a city's policies specify that an employee can only be terminated for cause." *Judkins*, 996 F. Supp. 2d at 1165 (quotation marks omitted). Put differently, a for-cause termination requirement "places a substantive restriction on the employer's discretion to dismiss the employee, and the employee therefore has a legitimate claim of entitlement to continued employment." *Id.* On the other hand, employees that can be terminated by their employer at will "carr[y] no vested property interest in continued employment." *Palmer*, 731 F. Supp. at 1506. An employee's status, therefore, is an important determination when analyzing whether that employee has a property interest in continued employment. *See Coleman v. Utah State Charter Sch. Bd.*, 673 F. App'x 822, 828 (10th Cir. 2016) ("At-will employees lack a property interest in continued employment.").

In this case, Poulsen identifies two statutes as the source of his claimed property interest: Utah Code Ann. § 17B-1-801 and § 17B-1-803. Section 801 provides:

> A merit system of personnel administration for the local districts of the state, their departments, offices, and agencies, except as otherwise specifically provided, is established.

Utah Code Ann. § 17B-1-801(1). Section 803, which is entitled "Merit Principles," states in relevant part:

5

> A local district may establish a personnel system administered in a manner that will provide for the effective implementation of merit principles that provide for . . . retaining employees *on the basis of the adequacy of their performance*.

*Id.* § 803(4) (emphasis added). Pursuant to these two statutes, Poulsen claims that CVTD was required to adopt a "merit system of personnel administration" that implements "merit principles." Such a merit-based system, Poulsen claims, prohibits local districts like CVTD from terminating employees without cause. In effect, Poulsen asserts that no local district employees are at-will employees. Because of that restriction, Poulsen contends that he had a property interest, and so was guaranteed due process protections under the Constitution, including the right to receive notice and an opportunity to be heard. Thus, Poulsen argues that when CVTD fired him without cause or an opportunity to be heard, it violated his due process rights and stripped him of his property interest in continued employment.

Conversely, Defendants contend that neither statute creates a property interest in continued employment. First, Defendants argue that section 801 does not impose a merit system of employment, and even if it did, the principles that would be associated with the system are not defined. Without the rights or limitations being defined in the statute, Defendants claim that the court cannot assume that a for-cause termination requirement would be included in such a system. Second, Defendants aver that section 803 does not impose, but merely allows, a local district to implement a personnel system based on merit principles. As such, Defendants contend that neither section imposes a mandatory merit-based system of employment. Consequently, they argue that Poulsen was an at-will employee without a property interest that CVTD could terminate without cause.

To resolve this motion, the court must therefore decide whether section 801 and/or section 803 create a property interest in continued employment for employees of local districts.

To do so, the court must determine whether the merit-based system of employment discussed in those sections imposes a mandatory for-cause termination standard on local districts. For the following reasons, the court concludes that they do not.

### 1. Sections 801 and 803

When federal courts are faced with interpreting state laws, they "must look to rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006). In addition, federal courts are to "interpret state laws according to state rules of statutory construction." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007). Because the Utah Supreme Court has yet to examine sections 801 and 803, the court will predict how the Utah Supreme Court would rule and apply Utah's rules for statutory construction. When interpreting a statute, the "primary objective is to ascertain the intent of the legislature." *Summit Operating, LLC v. Utah State Tax Comm'n*, 293 P.3d 369, 372 (Utah 2012). "[T]he best evidence of legislative intent is the plain language of the statute itself." *Bryner v. Cardon Outreach, LLC*, 428 P.3d 1096, 1099 (Utah 2018). Thus, the "first step of statutory interpretation is to look to the plain language" of the statute, *id.*, and the court will "assume the legislature used each term advisedly and in accordance with its ordinary meaning." *State v. Martinez*, 52 P.3d 1276, 1278 (Utah 2002). The court, however, will not "view individual words and subsections in isolation; instead, . . . statutory interpretation requires that each part or section be construed in connection with every other part or section so as to produce a harmonious whole." *Summit Operating*, 293 P.3d at 372 (quotation marks omitted). The court must further interpret the statute in a manner that "give[s] meaning to all parts, and avoids rendering portions of the statute superfluous." *LKL Assocs., Inc. v. Farley*, 94 P.3d 279, 281 (Utah 2004).

In this case, none of the parties' suggested interpretations of the statutes prove tenable. Under Poulsen's interpretation, CVTD was required, under *either* section 801 *or* section 803, to implement merit principles of employment that included a for-cause termination requirement. However, the plain language of section 803 provides that "[a] local district *may* establish a personnel system . . . that will provide for the . . . implementation of merit principles." § 17B-1-803 (emphasis added). The Legislature's use of the word "may" makes clear that local districts are not required to establish the type of personnel system described in section 803, but they can if they so choose. This leaves section 801 as Poulsen's only alternative. Yet, section 801 leaves the term "merit system of personnel administration" undefined, and to interpret that term as enforcing the optional merit principles enumerated in section 803 would render section 803's use of the term "may" superfluous. Moreover, it would require the court to read substantive provisions into the statute that the Legislature chose not to include for local districts, but did choose to include for counties.[4]

As mentioned above, Defendants agree with the interpretation that section 803's use of the term "may" allows but does not require local districts to implement merit principles. Defendants also contend that the court cannot use the merit principles listed in section 803 to define the term "merit system" in section 801. As such, Defendants aver that the term "merit system" simply remains ambiguous and undefined. Without a statutory definition, Defendants

---

[4] The County Personnel Management Act ("CPMA") contains sections that are nearly identical to sections 801 and 803. *Compare* Utah Code Ann. § 17B-1-801(1), *and* Utah Code Ann. § 17B-1-803, *with* Utah Code Ann. § 17-33-1(2) ("A merit system of personnel administration for the counties of the state of Utah, their departments, offices, and agencies, except as otherwise specifically provided, is established."), *and* Utah Code Ann. § 17-33-3 ("It is the policy of this state that each county may establish a personnel system administered in a manner that will provide for the effective implementation of the following merit principles: . . . retention of employees on the basis of the adequacy of their performance."). However, the CPMA has a definition section that specifically defines the term "merit system" to mean a "system of personnel administration based on the principles set forth in Section 17-33-3." *Id.* § 17-33-2(7). Accordingly, the "merit system" established in section 17-33-1(2) plainly refers to the merit principles defined in section 17-33-3, which dictates that counties should retain their employees *based on the adequacy of their performance*. No such definition exists for the term "merit system" as it is used in section 801.

8

claim that section 801 cannot impose a merit system of employment because there is no clarity or direction as to what type of merit principles such a system would entail. Defendants' interpretation, then, necessarily begs the question: if section 801 does not impose a merit system, what, if anything, does it do? It seems illogical for section 801 to establish a merit system but then have no real-world application. Nevertheless, that is the result of Defendants' interpretation. Indeed, under Defendants' reading of the statute, section 801 would become both useless and meaningless.

Despite Defendants' contentions, the court must read section 801 in a manner that will give it meaning. To do so, it is necessary to define the term "merit system" as it is used in section 801. Because there is no statutory definition for that term, the court will read it "in accordance with its ordinary meaning." *Martinez*, 52 P.3d at 1278. The term "merit system" is defined as the "practice of hiring and promoting employees, [especially] government employees, based on their competence rather than political favoritism." *Merit System*, Black's Law Dictionary (11th ed. 2019); *see also Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/merit%20system (last visited June 7, 2019) (defining merit system as "a system by which appointments and promotions in the civil service are based on competence rather than political favoritism"); *Oxford English Dictionary Online*, https://en.oxforddictionaries.com/definition/merit_system (last visited June 7, 2019) (defining merit system as "[a] system in which a post or promotion is awarded on the basis of competence rather than other criteria such as political affiliation or length of service"). Thus, merit systems place restrictions on employers when it comes to hiring and promoting employees. Importantly, however, the ordinary meaning of "merit system" does not include any restrictions on an employer's ability to discharge an employee. The court therefore concludes that the term merit

9

system established by section 801 does not impose any restrictions, let alone a for-cause termination requirement, on local district employers when discharging an employee.

With the ordinary meaning of "merit system" in mind, the proper reading of the statute becomes clearer. Put simply, section 801 establishes a baseline merit system for local districts that imposes restrictions on employers when hiring and promoting employees (i.e., hiring and promoting employees based on their competence and ability rather than political favoritism). But, a local district also has the option to establish a system based on the merit principles enumerated in section 803 if it so chooses. Neither statute, though, imposes a mandatory for-cause termination standard. Therefore, because neither section imposes substantive restrictions on CVTD's ability to discharge an employee, Poulsen had no "legitimate claim of entitlement to . . . continued employment" and thus enjoyed no property interest. *Carnes*, 922 F.2d at 1510. As a result, CVTD did not violate Poulsen's alleged due process rights when it terminated his employment without cause or a hearing because he was an at-will employee as established by the CVTD Employee Handbook. Accordingly, Defendants' request to dismiss Poulsen's First and Second Causes of Action is granted, and Beutler is hereby dismissed from this case.[5]

---

[5] Even if the court had concluded that Poulsen had a property interest in continued employment, Poulsen still would have been unable to recover against Beutler under the doctrine of qualified immunity. For a plaintiff to overcome the defense of qualified immunity, the plaintiff must demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In undertaking this analysis, the court may decide which of the two prongs to address first. *Id.* "In order [f]or a constitutional right to be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1004–05 (quotation marks omitted). In this case, it was not sufficiently clear whether Poulsen enjoyed a property interest in continued employment that demanded due process. Given the required statutory analysis conducted by the court and the absence of any case law analyzing sections 801 and 803 in this context, a reasonable official would not have been aware that terminating Poulsen's employment violated his due process rights.

## B. Whistleblower Claim

The Utah Protection of Public Employees Act, commonly known as Utah's Whistleblower Act, prohibits employers from "tak[ing] adverse action against an employee because the employee . . . communicates in good faith . . . a violation or suspected violation of a law, rule, or regulation." Utah Code Ann. § 67-21-3(1)(a). To bring a civil action under the Act, an employee must file suit "within 180 days after the occurrence of the alleged violation." *Id.* § § 4(1)(a). In this case, the alleged violation took place when CVTD terminated Poulsen's employment on February 28, 2018. Thus, Poulsen had 180 days from that date to bring his action. However, he did not file suit until September 6, 2018—190 days after CVTD terminated his employment. To circumvent the 180-day period, Poulsen contends that the exception found at Utah Code Ann. § 67-21-4(1)(b)(i) applies in this case. That exception provides that "an employee of a political subdivision *that has adopted an ordinance* described in Section 67-21-3.6 . . . may bring a civil action . . . within 180 days after the day on which the employee has exhausted administrative remedies." *Id.* § 4(1)(b)(i) (emphasis added. Section 67-21-3.6 provides that a political subdivision "may adopt an ordinance to establish an independent personnel board to hear and take action on a complaint alleging adverse action." *Id.* § 3.6(1)(a). The ordinance must include, among other things, "procedures for filing a complaint and conducting a hearing." *Id.* § 3.6(1)(b)(i).

Poulsen avers that April 23, 2018—the date that Defendants responded and refused to reinstate Poulsen—was the date on which Poulsen exhausted his administrative remedies. Since Poulsen filed suit on September 6, 2018, he argues that the exception makes his claims timely. But, at oral argument, Defendants confirmed that CVTD has not adopted the type of ordinance described in Section 67-21-3.6. Accordingly, the exception does not apply in this case, and

11

Poulsen's claim must be dismissed for being untimely.  Therefore, the court grants Defendants' request to dismiss Poulsen's Third Cause of Action.

## CONCLUSION

For the reasons set forth above, Defendants' Partial Motion to Dismiss is GRANTED, Plaintiff's First, Second, and Third Causes of Action are dismissed with prejudice, and Beutler is dismissed from this case.

Dated this 13th day of June, 2019.

BY THE COURT:

_Dale A. Kimball_
DALE A. KIMBALL
United States District Judge